STEPHEN R. JAFFE   SBN 49539
THE JAFFE LAW FIRM
101 California Street, Suite 2450
San Francisco, CA  94111
Telephone:    415.618.0100
Facsimile:    415.618.0880
www.JaffeTrialLaw.com

MARTHA A. BOERSCH, ATTORNEY AT LAW SBN 126569
The Russ Building
235 Montgomery Street, Suite 1070
San Francisco, CA  94104
Telephone: 415-217-3700
Facsimile: 415-888-2372
www.boerschlaw.com
Attorneys for SCOTT ROSE, MARY AQUINO, MITCHELL NELSON, and LUCY STEARNS, Relators

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SCOTT ROSE, MARY AQUINO, MITCHELL NELSON and LUCY STEARNS,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHENS INSTITUTE, a California corporation, doing business as ACADEMY OF ART UNIVERSITY and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No. C-09-5966-PJH<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, AND DEMAND FOR JURY TRIAL**<br><br>Claims:<br><br>1. Knowingly Presenting, or Causing to Be Presented, a False or Fraudulent Claim for Payment or Approval, 31 U.S.C. § 3729(a)(1)(A).<br><br>2. Knowingly Making, Using, or Causing to Be Made or Used, a False Record or Statement Material to a False or Fraudulent Claim, 31 U.S.C. § 3729(a)(1)(B). |

Plaintiffs and Relators SCOTT ROSE, MARY AQUINO, MITCHELL NELSON and LUCY STEARNS allege as follows:

## PRELIMINARY ALLEGATIONS

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising out of false claims presented by defendant Stephens Institute doing business as Academy of Art University ("AAU").

2. From at least the Fall of 2003, continually, through the present, AAU obtained millions of dollars annually from the United States Department of Education ("DOE") pursuant to the Higher Education Act, Title IV ("HEA").

3. As a condition of receiving such funds, AAU represented to the DOE that it was in compliance with the HEA's prohibition against incentive based compensation for recruiters.

4. In fact, at all relevant times herein, AAU was not in compliance with the HEA's incentive compensation ban and its representations of compliance to the DOE were and are false.

5. AAU had and continues to have actual knowledge that they are not in compliance with the HEA's ban, that its representations of compliance were and are false and that it was therefore submitting false or fraudulent representations of compliance.

6. Alternatively, Defendants acted with deliberate indifference and/or reckless disregard as to the truth or falsity of the claims.

7. Relators assert causes of action/claims under the False Claims Act for submission of a knowingly false or fraudulent claim for payment or approval, and knowingly presenting false records or statements to get a false or fraudulent claim paid or approved, in violation of 31 U.S.C. § 3729(a)(1) and (2).

## JURISDICTION AND VENUE

8. This action is brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331. This case arises from the wrongful conduct of the Defendants incident to obtaining funds from the United States of Department of Education pursuant to the Higher Education Act, Title IV.

9. This Court has *in personam* jurisdiction over the Defendants under 31 U.S.C. §

2

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*     SECOND AMENDED COMPLAINT FOR DAMAGES

3732(a).

10. Venue is proper in the Northern District of California because Defendants maintain and operate their campus within this District.

11. 31 U.S.C. § 3732(a) provides, "Any action under 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant, can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

## PLAINTIFFS

12. *Qui Tam* plaintiffs-relators SEAN ROSE, MARY AQUINO, MITCHELL NELSON, and LUCY STEARNS are citizens of the United States of America and are residents of the Northern District of California. Plaintiff-relators bring this action on behalf of the United States of America.

13. Relators, simultaneously with the filing of this Complaint, provided to the United States Attorney for the Northern District of California a statement of all material evidence and information related to this Complaint as required under the False Claims Act, 31 U.S.C. § 3730(b)(2).

14. The United States of America is named a plaintiff in this action because funds of the United States of America were fraudulently obtained by defendant AAU.

## DEFENDANTS

15. Defendant AAU is a private, for-profit higher education institution, which maintains multiple academic and housing facilities in San Francisco, California. AAU claims to be the largest private school of art and design in the United States and that it is accredited by the Western Association of Schools and Colleges ("WASC").

16. Relators are unaware of the true names and capacities of the Defendants sued as Does 1 through 50. Plaintiffs will amend their complaint when their true names and capacities have been ascertained. Each Doe Defendant is responsible in some actionable manner for the events, occurrences, injuries and damages alleged herein.

17. The term "defendants" refers collectively to the aforesaid defendants acting by

THE JFFE LAW FIRM

3

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*   SECOND AMENDED COMPLAINT FOR DAMAGES

and through their managerial employees, and each of them.

18. In doing the acts and things described in this complaint, managerial employees of the defendants acted within the course and scope of their respective agencies and/or employment with the defendants, and each of them, with the knowledge and consent of the defendants, and each of them.

19. In doing the acts and things described in this complaint each defendant was the authorized agent of each other defendant.

## SPECIFIC FALSE CLAIMS AND FRAUDULENT STATEMENTS

### I. THE FRAUDULENT INCENTIVE COMPENSATION SCHEME

20. 20 U.S.C. §1094 prohibits colleges and universities that receive federal funds from providing "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities…." This law is intended to prevent and avoid the risk that recruiters will enroll poorly qualified students who will derive little benefit from federally-funded tuition and other subsidies and may be unable or unwilling to repay federally guaranteed loans.

21. During the relevant period, DOE regulations contained a so-called "Safe Harbor" provision, which provided that an educational institution may, without violating the ban on incentive-based compensation, provide "payment of fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period and any adjustment is not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid." 34 C.F.R. § 668.14(b)(22)(ii)(A) (2010).

22. At all material times herein, AAU violated the foregoing Title IV prohibition by adjusting the compensation of admissions representatives, including (but not limited to) the plaintiff-relators herein, in a manner based solely, directly and indirectly on their success in securing enrollments or financial aid, and knew that it was violating the Title IV prohibition.

THE JFFE LAW FIRM

4

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*   SECOND AMENDED COMPLAINT FOR DAMAGES

23. At all material times herein, AAU's method of determining the compensation of admissions representatives failed to fall within the foregoing so-called "Safe Harbor" provision. AAU knew it failed to meet the Safe Harbor requirements and/or acted in reckless disregard of that fact because, in fact and in practice, adjustments to recruiter compensation were based solely on the basis of the number of students recruited, admitted enrolled or awarded financial aid.

24. During the relevant period, admissions representatives including (but not limited to) the plaintiff-relators herein, were given an enrollment "goal" at the start of each recruiting period. Admissions representatives were strongly encouraged and pressured to meet those enrollment or registration goals.

25. Based solely on whether or not they met or exceeded this enrollment goal, the compensation of admission representatives including (but not limited to) the plaintiff-relators herein, was increased *or decreased* twice a year, in March and October.

26. For example, in or about July 2010, plaintiff-relator Mary Aquino was informed by Noreen Chan, Admissions Manager, that she would receive an $8,000 salary increase if she met her recruitment goal of 65 students, if she achieved 125% of that goal she would receive a $10,000 salary increase and if she achieved 150% of that goal, she would receive $15,000 salary increase. *See* Exhibit A (email exchange); Exhibit B (note in handwriting of Noreen Chan).

27. In or about June 2009, Admissions Representative Thai Lam spoke with Rachel Lee AAU's Chief Operating Officer. Lee explained that all increases and decreases to admissions representatives were based on meeting or exceeding recruitment numbers, *i.e.,* if the representative met their goal, he or she would receive a salary increase of $8,000 and if he or she failed to meet their goal their annual salary would be *decreased* by $8,000. Exhibit C [June 12, 2009 email from Thai Lam].

28. AAU attempted to conceal its fraudulent compensation scheme and unlawful conduct by refusing to write down or share documents containing the recruitment goals and corresponding compensation adjustments and by refusing to disclose to and refusing to allow its admissions representatives to retain any written documentation of its incentive compensation

THE JFFE LAW FIRM

5

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*     SECOND AMENDED COMPLAINT FOR DAMAGES

scheme.

29. In or about December 2009, Veronica Del Rico, Director of Admissions, refused to provide plaintiff-relator Mitch Nelson with a document that reflected his admissions goals and the amount his compensation was being reduced as a direct result of, and in proportion to, the amount by which he failed to meet that goal. Exhibit D [email between M.Nelson and V. Del Rico, December 16-17, 2009]. Instead, AAU conveyed the enrollment goals and accompanying financial incentives only through information sheets that were shown to admissions representatives at their semiannual evaluations but were retained by AAU.

30. In or about MID-2011, Admissions Representative Scott Rose manually copied *verbatim* information from a document Veronica del Rico, AAU's Vice President of Training and Development, had shown but refused to provide to with Mr. Rose. That document indicated if the admissions representatives met their recruitment goals, they would receive a salary increase of $8,000; if they met 125% of their goal, they would receive a salary increase of $10,000 and if they met 150% of their goal they would receive a salary increase of $15,000. Exhibit E.

31. Admissions representatives could also have their compensation reduced or clawed back based directly on their success in meeting numerical enrollment goals. Twice a year, admissions representatives would receive an "Overpayment Adjustment Form" in which they were informed of how much of the compensation was being clawed back if they had failed to meet their recruitment goals. These "Overpayment Adjustment Forms" identified from which of their future paychecks money would be withheld and by how much each paycheck would be reduced. Exhibit F. AAU's determination on whether to reduce or claw back salary from admissions representatives on account of their failure to meet predetermined registration goal was made solely based upon the number of students the admissions representatives had recruited (or failed to recruit) in relation to each admission representative's predetermined registration goal. No other criteria were used in this calculation. (Exhibit F)

32. Admissions representatives were told by AAU that, if they met their enrollment "goal," (in reality, a quota), their annual salary could be increased by as much as $30,000 at the

THE JFFE LAW FIRM

6

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*  SECOND AMENDED COMPLAINT FOR DAMAGES

time of their next evaluation. If the admissions representatives then met their registration and enrollment goals, AAU increased their salary by $30,000 at the time of their next review.

33. Plaintiff-relators' salary histories illustrate and substantiate the unlawful compensation scheme alleged herein.

34. In addition to salary, AAU also illegally compensated enrollment counselors based upon enrollments through trips and gifts. Enrollment counselors were promised a trip to Hawaii if their team enrolled a minimum number of students.

35. AAU attempted to conceal its fraud and violations of 20 U.S.C. § 1094 from the United States and others, and to continue to receive federal funding under false and fraudulent pretenses, by creating sham and superficial "qualitative criteria" by which it purported to measure the job performance of its admissions representatives and upon which to base their individual compensation. In fact, these criteria were based on basic requirements that any employee would be required to meet, and in fact and in practice had no impact on increases or decreases to the compensation of admissions representatives, which increases and decreases were, in truth and in practice, based solely upon whether the admissions representatives met their enrollment or registration goals. AAU never intended to use nor did it ever use the pretextual qualitative criteria to determine the total compensation of its admissions representatives, but instead continued to use student recruitment and enrollment data as the sole criteria to determine increases and decreases to the compensation of its admissions representatives.

36. At all times mentioned herein, AAU was and is fully aware of the illegality of the compensation plan, structure and scheme under which it was compensating its admissions representatives.

## II. AAU'S FALSE CERTIFICATIONS OF COMPLIANCE TO THE FEDERAL GOVERNMENT

37. Educational institutions request Title IV funds for eligible students through several programs, including the federally funded Pell Grant Program ("Pell"), the Federal Supplemental Educational Opportunity Grant Program ("FSEOG"), the Federal Perkins Loan Program ("Perkins") and the Federal Family Education Loan Program ("FFELP").

THE JFFE LAW FIRM

7

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*  SECOND AMENDED COMPLAINT FOR DAMAGES

38. AAU's eligibility to receive these funds is explicitly conditioned on its compliance with the incentive compensation ban in at least three separate respects.

39. First, in order to be eligible to receive Title IV funds, educational institutions are required to enter into a Program Participation Agreement with the United States Government, which prohibits incentive compensation. AAU entered a Program Participation Agreement with the United States Government that states:

> The execution of this Agreement [which contains a reference to the incentive compensation ban] by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.

40. Second, 20 U.S.C. § 1094(a) states that in order to be eligible to receive Title IV funds, an institution must:

> [E]nter into a program participation agreement with the Secretary [of Education]. The agreement *shall* condition the initial and continuing eligibility of an institution to participate in a program upon compliance with the following requirements ... [including the incentive compensation ban.] 20 U.S.C. § 1094(a) [emphasis added].

41. Third, 34 C.F.R. § 668.14(a)(1) states:

> An institution may participate in any Title IV, HEA program ... only if the institution enters into a written program participation agreement with the Secretary.... A program participation agreement conditions the initial and continued participation of an eligible institution in any Title IV, HEA program upon compliance with the provisions of this part [such as the incentive compensation ban.]" 34 C.F.R. § 668.14(a)(1).

42. Compliance with the ban prohibiting incentive compensation is thus a necessary condition of eligibility to receive Title IV funds.

43. By falsely representing its compliance with the incentive compensation ban in the Agreement, AAU made knowingly false statements which have resulted in the Department of Education paying millions of dollars to AAU which it was not entitled to lawfully receive.

THE JFFE LAW FIRM

8

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*     SECOND AMENDED COMPLAINT FOR DAMAGES

## III. AAU'S CLAIMS FOR FEDERAL GOVERNMENT FUNDS

44. Upon entering the Program Participation Agreement with the United States Secretary of Education, AAU became eligible to request the Title IV funds from the United States Secretary of Education (for Pell Grant funds) or from third party lenders (for government-insured loans).

45. To obtain Pell Grant funds, AAU submits a request for those funds directly to the Secretary of the United States Department of Education. The request for funds is not a student application but rather a request prepared and transmitted by AAU to the Secretary of the United States Department of Education, stating the requested amount of funds. The United States Department of Education transfers the Pell Grant funds electronically directly into a AAU account. Upon receiving the Pell Grant funds, AAU credits various AAU students for tuition paid.

46. AAU's claims for the Pell Grant funds are fraudulent. When AAU requests, receives and retains Pell Grant funds, AAU knows it is not eligible to lawfully receive those funds because of its intentional violations of the Higher Education Act incentive compensation ban as alleged hereinabove.

47. To obtain government-insured loans for enrolling students, including the FFELP, AAU submits the request for those funds directly to a private lender. The lender then transfers the government-insured loan funds directly into a AAU bank account. Upon receiving the government-insured loan funds, AAU credits various AAU students for tuition paid.

48. AAU's violations of the HEA incentive compensation ban make it an ineligible educational institution to request and disburse Title IV funds and thus its students are ineligible under the Title IV program.

49. AAU's claims for federal government-insured loan funds are fraudulent. When AAU requests, receives and retains the government-insured loan funds, AAU knows it is ineligible for those funds because of its intentional violations of the Higher Education Act incentive compensation ban. AAU knows that compliance with the Higher Education Act funding statute incentive compensation restriction is a core prerequisite for an institution's

THE JFFE LAW FIRM

9

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*   SECOND AMENDED COMPLAINT FOR DAMAGES

eligibility to request and receive Title IV funds.

50. The United States Government pays all interest on the government-insured loans while the students are enrolled in classes and during authorized grace periods. The loans are guaranteed by state agencies and/or non-profit organizations ("guarantee agencies"), and are subsidized and reinsured by the United States Department of Education. If a student defaults, the guarantee agency reimburses the lender. If the guarantee agency cannot collect from the student, the Department of Education reimburses the agency.

51. The United States Department of Education monitors loan defaults of postsecondary schools and calculates a "cohort default rate" every year for AAU. The Department of Education calculates the loss to the United States Government relying upon this rate.

## FIRST CLAIM

**Knowingly Presenting, or Causing to Be Presented, a False or Fraudulent Claim for Payment or Approval, 31 U.S.C. § 3729(a)(1)(A).**

52. Plaintiffs re-allege, and fully incorporate herein by reference, paragraphs 1 through 51 herein.

53. In performing all of the acts set out herein, defendants knowingly presented, or caused to be presented, multiple false and/or fraudulent claims to the United States Department of Education for its payment or approval, in violation of the False Claims Act (31 U.S.C. § 3729(a)(1)(A), to the damage of the Treasury of the United States of America, causing the United States to pay out millions of dollars to AAU it was not obligated to pay.

## SECOND CLAIM

**Knowingly Making, Using, or Causing to Be Made or Used, a False Record or Statement Material to a False or Fraudulent Claim, 31 U.S.C. § 3729(a)(1)(B).**

54. Plaintiff-relators re-allege, and fully incorporate herein by reference, paragraphs 1 through 53 herein.

55. By virtue of the acts described above, AAU has knowingly made, used or caused to be made or used, false records or statement material to a false or fraudulent claim, in

THE JFFE LAW FIRM

10

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*  SECOND AMENDED COMPLAINT FOR DAMAGES

contravention of the False Claims Act (31 U.S.C. §3729(a)(1)(B)), to the damage of the Treasury of the United States of America, by causing it to pay out millions of dollars to AAU it was not obligated to pay.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

1. Judgment in favor of the United States of America against defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, in an amount equal to three times the amount of damages the United States has sustained because of defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000), and not more than Ten Thousand Dollars ($10,000.00), for each violation;
2. Award to plaintiff-relators, as *Qui Tam* plaintiffs, of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act on the United States' Recovery;
3. Award to plaintiff-relators of all reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs;
4. Punitive damages on all causes of action, to the extent allowable by law; and
5. Such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, plaintiff-relators demand a trial by jury.

Dated: November 8, 2011        THE JAFFE LAW FIRM
             MARTHA A. BOERSCH

By:_____/s/_____
STEPHEN R. JAFFE
ATTORNEYS FOR PLAINTIFF-RELATORS
SCOTT ROSE, MARY AQUINO, MITCHELL
NELSON, AND LUCY STEARNS.

THE JFFE LAW FIRM

11

*United States of America ex. rel. Rose v. Stephens Institute dba Academy of Art University*    SECOND AMENDED COMPLAINT FOR DAMAGES