RITZERT & LEYTON, P.C.
Steven M. Gombos (VA SBN 30788)
(admitted *pro hac vice; lead counsel*)
11350 Random Hills Road, Suite 400
Fairfax, Virginia 22030
Telephone: (703) 934-2660
Facsimile: (703) 934-9840
Email: sgombos@ritzert-leyton.com


LAW OFFICES OF LELAND B.
ALTSCHULER
Leland B. Altschuler (CA SBN 81459)
2995 Woodside Road, Suite 350
Woodside, CA 94062
Telephone: (650) 328-7917
Facsimile: (650) 989-4200
Email: Lee@AltschulerLaw.com


COUNSEL FOR: Defendant Stephens Institute
d/b/a Academy of Art University

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SCOTT ROSE, MARY AQUINO, MITCHELL NELSON AND LUCY STEARNS,<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>STEPHENS INSTITUTE, a California corporation, doing business as ACADEMY OF ART UNIVERSITY and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case No. C-09-5966 PJH**<br><br><br>DEFENDANT'S SUPPLEMENTAL BRIEF IN REPSONSE TO THE COURT'S MARCH 9, 2016 ORDER (ECF Doc. 170)<br><br><br>**DATE: March 9, 2016**<br>**TIME: 9:00 a.m.**<br>**JUDGE: Hon. Phyllis Hamilton** |

## SUPPLEMENTAL BRIEF REGARDING SUBJECT MATTER JURISDICTION

Defendant's Supplemental Brief Re: Subject Matter Jurisdiction– Case No. CV-09-5966 PJH

# TABLE OF CONTENTS

I.       INTRODUCTION ................................................................................................. 1

II.     ANALYSIS OF FCA SUBJECT MATTER JURISDICTION .................................. 2

A.     **Relators Derived Critical Allegations From Publicly Disclosed Sources.** ................... 3

B.     **Relators Lack Direct And Independent Knowledge And Failed To Notify The Government Before Filing Their *Qui Tam* Lawsuit** ........................................................ 7

III.    CONCLUSION ................................................................................................. 10

CERTIFICATE OF SERVICE ..................................................................................... 12

**EXHIBITS**

1. Deposition Excerpts – Scott Rose

2. Deposition Excerpts – Mary Aquino

3. Deposition Excerpts – Mitchell Nelson

4. Deposition Excerpts – Lucy Stearns

5. Affidavit of Justin J. Weiss

# TABLE OF AUTHORITIES

**CASES**

*A-1 Ambulance Serv. v. California*,
202 F.3d 1238, (9th Cir. 2000)................................................................................ 2

*Berg v. Honeywell Int'l, Inc.*,
502 F. App'x 674 (9th Cir. 2012) ........................................................................... 1

*Davis v. District of Columbia*,
413 F. App'x 308, 311 (D.D.C. 2011) ................................................................... 13

*Graham Cnty Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280  (2010) ............................................................................................... 1

*Hagood v. Sonoma County Water Agency*,
81 F.3d 1465 (9th Cir. 1996)) ................................................................................. 3

*Schultz v. DeVry, Inc.*,
2009 U.S. Dist. LEXIS 17015 (N.D. Ill. Mar. 4, 2009) ........................ 4, 5, 8, 10, 12

*United States ex rel. Carter v. Bridgepoint Educ., Inc.*,
2015 U.S. Dist. LEXIS 108200 (S.D. Cal. Aug. 17, 2015)...................................... 2

*United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*,
2000 U.S. Dist. LEXIS 19249 (N.D. Ill. 2000)..................................................... 13

*United States ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006)........................................................................... 4, 10

*United States ex rel. Hoggett v. Univ. of Phoenix*,
2014 U.S. Dist. LEXIS 101528 (E.D. Cal. July 24, 2014)............... 3, 4, 5, 6, 9, 11, 12

*United States ex rel. Lee v. Corinthian Colleges*,
2013 U.S. Dist. LEXIS 188352 (C.D. Cal. Mar. 15, 2013) ................... 3, 5, 6, 7, 9, 12

*United States ex rel. Lopez v. Strayer Educ., Inc.*,
698 F. Supp. 2d 633 (E.D. Va. 2010)........................................... 1, 6, 7, 8, 10, 11, 12

*United States ex rel. Main v. Oakland City Univ.*,
426 F.3d 914 (7th Cir. 2005)) ............................................................................... 11

*United States ex rel. Meyer v. Horizon Health Corp.*,
565 F.3d 1195 (9th Cir. 2009)................................................................................. 3

*United States ex rel. Siller v. Becton Dickinson & Co.*,
21 F.3d 1339 (4th Cir. 1994)) ................................................................................. 1

*United States v. Alcan Elec. & Eng'g, Inc.*,
197 F.3d 1014 (9th Cir. 1999)................................................................................. 5

*United States v. Johnson Controls, Inc.*,
457 F.3d 1009 (9th Cir. 2006)............................................................................... 12

**STATUTES**

31 U.S.C. § 3730(e)(4)(A) (2009) ................................................................................ 1, 2, 3

31 U.S.C. § 3730(e)(4)(B) (2009) ................................................................................... 3, 8, 10

# I. INTRODUCTION

The False Claims Act ("FCA") permits private individuals to prosecute claims of fraud on the government's behalf. But this *qui tam* provision is balanced against a jurisdictional bar: "No court shall have jurisdiction over an action under this section based upon public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [General] Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A) (2009).[1]

This jurisdiction-stripping provision was designed for cases just as this – "'parasitic' actions by *qui tam* relators which, 'rather than bringing to light independently-discovered information of fraud, simply feed off of previous disclosures of government fraud.'" *United States ex rel. Lopez v. Strayer Educ., Inc.*, 698 F. Supp. 2d 633, 636 (E.D. Va. 2010) (quoting *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994)). Rather than independently-discovered information of fraud, it is apparent that prior *qui tam* lawsuits raising similar allegations were both the blueprint and impetus of this action.

The extent to which Relators' allegations were based upon public disclosures became fully apparent only during AAU's briefing in support of summary judgment. *See* ECF Doc. 166, Ex. 112 (Walker Aff.). Because the question of subject matter jurisdiction alters both the burden of proof (on Relators' to show jurisdiction) and the Court's review of the evidence (the Court is not required to view the evidence in Relators' favor) from the standards applicable at summary

---

[1] The public disclosure bar was substantively amended effective March 23, 2010. Both the Supreme Court and the Ninth Circuit have held that the 2010 amendments are not retroactive. *Graham Cnty Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010); *Berg v. Honeywell Int'l, Inc.*, 502 F. App'x 674, 676 n.1 (9th Cir. 2012). Although courts have identified two different points of reference for determining retroactivity – some courts ask whether the acts comprising the alleged fraud occurred before the amendments; others whether the lawsuit was filed prior to the amendments – the pre-amendment public disclosure bar is appropriate under either in this case.

judgment, counsel for AAU did not brief the public disclosure bar prior to the hearing on AAU's

motion for summary judgment.

## II.     ANALYSIS OF FCA SUBJECT MATTER JURISDICTION

"To establish federal court jurisdiction over their claims under the False Claims Act,

Relators must demonstrate either: (1) that their allegations are not based upon a public disclosure

of information; or (2) that they are an 'original source' of the information." *United States ex rel.*

*Carter v. Bridgepoint Educ., Inc.*, 2015 U.S. Dist. LEXIS 108200 (S.D. Cal. Aug. 17, 2015).

The public-disclosure question raises two distinct determinations. First, "whether the

public disclosure originated in one of the sources enumerated in [31 U.S.C. § 3730(e)(4)(A)]."

*A-1 Ambulance Serv. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000). Second, if the public

disclosure occurred in one of those sources, then "whether the content of the disclosure consisted

of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere

information.'" *Id.* (quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th

Cir. 1996)).

This inquiry is not meant to be overly "precise" or demanding. *United States ex rel.*

*Hoggett v. Univ. of Phoenix*, 2014 U.S. Dist. LEXIS 101528, *18 (E.D. Cal. July 24, 2014). "'In

order to constitute public disclosure, the publicly disclosed facts need not be identical with, but

only substantially similar to, the relator's allegations.'" *Id.* at *19 (quoting *United States ex rel.*

*Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009). If so, "then the case must

be dismissed unless the relator is [an] original source of the . . . allegations." *United States ex*

*rel. Lee v. Corinthian Colleges*, 2013 U.S. Dist. LEXIS 188352, *16 (C.D. Cal. Mar. 15, 2013).

To meet their burden under the original source prong, Relators must show that they

possessed direct and independent knowledge of the information on which the allegations of fraud

are based *and* voluntarily provided that information to the government *before* filing the *qui tam* action. 31 U.S.C. § 3730(e)(4)(B) (2009). "The test for establishing [direct and] independent knowledge is an exacting one." *Hoggett*, 2014 U.S. Dist. LEXIS 101528, at *29. To meet this requirement, Relators must show that they "had firsthand knowledge of the alleged fraud, and that [they] obtained this knowledge through [their] own labor unmediated by anything else." *Id.*

### A. Relators Derived Critical Allegations From Publicly Disclosed Sources.

The allegations and transactions included in Relators' complaint have been the subject of extensive public disclosure through the sources identified in § 3730(e)(4)(A).[2] Before Relators filed this action, congressional hearings and Department of Education reports had identified widespread fraud among proprietary schools concerning the incentive compensation ban and Safe Harbor provisions.[3] Numerous FCA lawsuits had also advanced the same allegations raised in Relators' complaint – "that the educational institutions violated the False Claims Act by agreeing in program participation agreements to comply with Title IV's recruiter compensation restrictions, but failing to comply with the restrictions."[4] *Schultz v. DeVry, Inc.*, 2009 U.S. Dist. LEXIS 17015, *7 (N.D. Ill. Mar. 4, 2009). And finally, as Relators' counsel conceded during Rose's deposition, "there are probably hundreds" of news articles "in the public record" "about *EDMC*, *Phoenix*, *Corinthian* – cases that all of [the parties] are familiar with."[5] Ex. 1 (Rose

---

[2] Under § 3730(e)(4)(A), a public disclosure must occur through one of three sources: (1) in a "congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation," (2) in a "criminal, civil, or administrative hearing," or (3) in the "news media." 31 U.S.C. § 3730(e)(4)(A) (2009).

[3] *See* Ex. 5, ex. D-F (Weiss Aff.).

[4] *See, e.g.*, *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) (alleging that the school created "'fake' performance reviews based on legitimate qualitative factors"); *see also* Ex. 5, ¶13-14 (Weiss Aff.) (identifying additional lawsuits alleging similar allegations against for-profit schools).

[5] Nelson testified that "a couple [of] cases . . . that might have set a precedent in regard to this case" were brought to his attention by counsel after their initial meeting." Ex. 3 (Nelson Depo.) p. 95, L. 3-19.

Depo.) p. 171, L. 8-p. 174, L. 21.  Aquino admits she researched those articles, and Rose recalled

receiving news articles about "similar cases" from co-Relators and counsel.[6] Ex. 2 (Aquino

Depo.) p. 159, L. 4-p. 160, L. 10; Ex. 1 (Rose Depo.) p. 172, L. 19-21.

To be sure, those public disclosures do not specifically identify AAU, but the Ninth

Circuit has held that a public disclosure need not name a defendant specifically. *United States v.*

*Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1019 (9th Cir. 1999).  It need only contain enough

information to place the government on notice of the fraud.  *Id.*; *Corinthian*, 2013 U.S. Dist.

LEXIS 188352, *33.  Moreover, allegations of "industrywide" fraud suffice to put the

government on notice, when the public disclosure identifies a narrow class of wrongdoers and

specifies the alleged fraudulent transactions.  *Hoggett*, 2014 U.S. Dist. LEXIS 101528, *23-24.

The United States was therefore on notice given the Congressional hearings, DOE reports, and

prior *qui tam* lawsuits mentioned above.  *See* Ex. 5 (Weiss Aff.).

This reasoning has been applied on numerous occasions by courts considering the same

publicly disclosed allegations at issue in this case:  that for-profit schools were falsely certifying

compliance with Title IV's incentive compensation ban while masking their noncompliance from

the Department of Education.  *Schultz*, 2009 U.S. Dist. LEXIS, *6 (noting prior cases raised "the

same allegations [as] in the . . . complaint"); *Lopez*, 698 F. Supp. 2d at 644 (noting that although

the prior litigation did not name Strayer specifically, it "certainly suffice[d] to specifically

indicate how other proprietary [schools] . . . had purportedly violated Title IV's incentive

payment rule and how that violation could act as a basis for an FCA claim"); *Corinthian*, 2013

U.S. Dist. LEXIS 188352, at *20 (concluding that "other *qui tam* lawsuits . . . against other

major career schools on the basis of violating the incentive compensation ban was enough to put

---

**[6]** *See* Ex. 5, ex. G-H (Weiss Aff.).

Defendant's Supplemental Brief Re: Subject Matter Jurisdiction – Case No. CV-09-5966 PJH

the government on notice of Relators' allegations"); *Hoggett*, 2014 U.S. Dist. LEXIS 101528, *23-24. Each of those courts concluded that the critical elements of the respective allegations were publicly disclosed in prior *qui tam* litigation and accompanying media reports.

This Court need look no further than the complaint filed in *Hendow* to determine that Relators' allegations in their filed complaint were based upon public disclosures. *See* Ex. 5, (Weiss Aff.). Relators' allegations in this case are not merely "substantially similar" to the allegations in the *Hendow* complaint but largely verbatim recitations with minor formatting changes and substitutions for "UOP" (referring to University of Phoenix) with "AAU." *See* Ex. 5, (Weiss Aff.). Indeed, twenty-two of the forty-eight paragraphs included in Relators' complaint are nearly identical to paragraphs in the *Hendow* complaint. Ex. 5 (Weiss Aff.). This includes the core elements of Relators' FCA claims –that AAU made knowingly false representations to the government – which are largely taken almost word for word from the complaint filed in *Hendow*. For example:

| *Hendow* SAC ¶36 (emphasis added): | Relators' Complaint ¶38 (emphasis added): |
|---|---|
| "**(a) UOP's** claims for the government-insured loan funds are fraudulent. **(b)** When **UOP** requests, receives and retains the government-insured loan funds, UOP knows it is ineligible for those funds because of its intentional violations of the Higher Education Act incentive compensation ban. **(c) UOP** knows that compliance with the Higher Education Act funding statute incentive compensation restriction is a core prerequisite for an institution's eligibility to request and receive Title IV funds." | **AAU's** claims for **federal** government-insured loan funds are fraudulent. When **AAU** requests, receives and retains the government-insured loan funds, AAU knows it is ineligible for those funds because of its intentional violations of the Higher Education Act incentive compensation ban. **AAU** knows that compliance with the Higher Education Act funding statute incentive compensation restriction is a core prerequisite for an institution's eligibility to request and receive Title IV funds." |

Given this nearly verbatim repetition throughout Relators' complaint, there can be no doubt that Relators' complaint is "based upon" the *Hendow* complaint.[7] *See Lopez*, 698 F. Supp. 2d at 643 (finding "word-for-word" language from prior *qui tam* complaint "strong evidence" under Fourth Circuit's more demanding "actually derived" test).

The similarity is more than coincidental. It is demonstrative evidence that Relators' counsel acquired information of the alleged fraud from publicly disclosed allegations, not from Relators' firsthand experiences at AAU. Even apart from those allegations copied directly from *Hendow*, it is evident from Relators' deposition testimony that allegations describing the specific false claims and certifications were "based upon" public disclosures. There is no evidence in this case that any Relator knew of AAU's "obligations under Title IV or the program participation agreement" until meeting with counsel, and there is substantial evidence to the contrary. *Schultz*, 2009 U.S. Dist. LEXIS 17015, *10.

That Relators included additional factual allegations relating to AAU's compensation practice is of no moment. Knowledge of a compensation plan does not an FCA claim make. Relators could not state an FCA claim alleging promissory fraud or false certification (whether express or implied) without alleging that AAU made a knowingly false promise to comply with its Title IV obligations and program participation requirements. Because Relators were unfamiliar with those basic requirements, they necessarily based their fraud claims upon publicly disclosed allegations included in earlier *qui tam* actions and news reports.[8] While courts have

---

[7] This Court should look to the initial complaint to determine whether it possesses subject matter jurisdiction. *See Corinthian*, 2013 U.S. Dist. LEXIS 188352, *26-30 (stating that court must have jurisdiction from outset). But the analysis would be the same under Relators' second amended complaint. *See* ECF Doc. 166, Ex. 112, ex. D (Walker Aff.).

[8] Relators confirmed during deposition that they reviewed similar cases and accompanying news reports after meeting with counsel. Ex. 1 (Rose Depo.) p. 172, L. 19-21; Ex. 2 (Aquino Depo.) p. 159, L. 4-p. 160, L. 10; Ex. 3 (Nelson Depo.) p. 95, L. 3-19.

cautioned that prior *qui tam* litigation should not "immunize all other . . . educational institutions from subsequent suit," those actions "reveal that this theory of FCA liability . . . is susceptible to generic repetition by unqualified relators." *Lopez*, 698 F. Supp. 2d at 643. The public disclosure bar requires Relators to do more than merely "echo" existing allegations of fraud.

On this point, the facts of this case are essentially indistinguishable from those of *Schultz.* As in this case, the relator in *Schultz* alleged she "was familiar with the [school's] compensation structure" and even produced "internal [school] documents" purportedly describing the school's compensation plan. *Schultz,* 2009 U.S. Dist. LEXIS 17015 at *9-10. Yet, like Relators, "she knew nothing about [the school's] obligations under Title IV or the program participation agreement until [the litigation commenced.]" *Id.* at *10. Absent that personal knowledge, the *Schultz* Court concluded the relator could not assert the central element of her FCA claim – that "DeVry fraudulently caused the DOE to disburse federal loans and grants by failing to comply with promised student recruiter compensation restrictions." *Id.* at *10. Because the relator lacked personal knowledge of the central element of her claim (the false promise of compliance), the court concluded that the complaint was necessarily based on publicly disclosed allegations that provided that missing information. *Id.* So too Relators' complaint.

Because Relators' allegations were "based upon" public disclosures, this Court lacks subject matter jurisdiction, unless they can "satisfy the required jurisdictional showing" by affirmatively proving "that they were the original sources of the information disseminated through the public disclosures." *Corinthian*, 2013 U.S. Dist. LEXIS 188352, *33. They cannot.

**B.      Relators Lack Direct And Independent Knowledge And Failed To Notify The Government Before Filing Their *Qui Tam* Lawsuit.**

A relator is an original source of a public disclosure *only* if they possess direct and independent knowledge of the information on which the allegations are based. 31 U.S.C.

§ 3730(e)(4)(B) (2009). Relators here cannot meet this "exacting" demand. *Hoggett*, 2014 U.S. Dist. LEXIS 101528, at \*29. The evidence shows that Relators lacked "firsthand knowledge of the [critical elements of the] alleged fraud." *Id.*

Among the core elements they must include in order to establish an FCA claim, Relators must allege that AAU knowingly made a false statement or engaged in a fraudulent course of conduct. *Hendow*, 461 F.3d at 1174. In the context of this case that "necessarily" entails allegations concerning "the representations made by [AAU] to the government in its PPAs." *Lopez*, 698 F. Supp. 2d at 638. Indeed, Relators allege that AAU defrauded the government "[b]y falsely representing its compliance with the incentive compensation ban in the [program participation agreement." *See* ECF Doc. 1 (Complaint) ¶32.

But Relators had no knowledge of any AAU program participation agreement ("PPA") before conferring with counsel, let alone personal knowledge that AAU allegedly falsely certified its compliance with Title IV's ban on paying incentive compensation. Rose conceded in his deposition that he did not know what a PPA was. *See* <u>Ex. 1</u> (Rose Depo.) p. 98, L. 12-14. More fundamentally Aquino, Nelson, and Stearns lacked fundamental knowledge concerning key elements of their FCA claim, like the incentive compensation ban and Safe Harbor A, until conferring with their counsel in this litigation. <u>Ex. 2</u> (Aquino Depo.) p. 155, L. 18 – p. 156, L. 3; <u>Ex. 3</u> (Nelson Depo.) p. 97, L. 24 – p, 98, L. 13; p. 208, L. 11-18; <u>Ex. 4</u> (Stearns Depo.) p. 69, L. 24 – p. 72, L. 8. This is not direct and independent knowledge. *See Schultz*, 2009 U.S. Dist. LEXIS 17015, \*10 (secondhand information learned from counsel).

Relators likewise lack personal knowledge of any Title IV requirements, any false claims AAU allegedly submitted, or any certifications AAU made. As late as her deposition, Aquino was unaware that AAU even participated in Title IV. <u>Ex. 2</u> (Aquino Depo.) p. 58, L. 19-20. It is

unsurprising, then, that she did not know "when," if ever, "AAU represented to the DOE that it was in compliance with the HEA's prohibition against incentive compensation for recruiters," a key facet of Relators' FCA claim. Ex. 2 (Aquino Depo.) p. 127, L. 25-p. 128, L. 24 (addressing Second Amended Complaint); *see Lopez*, 698 F. Supp. 2d at 638. Stearns likewise testified that she lacked sufficient familiarity with "Title IV obligations" to even opine whether AAU violated any rule by drawing down "funds" for students. Ex. 4 (Stearns Depo.) p. 18, L. 5-14; ECF Doc. 1 (Complaint) ¶37 ("AAU's violations of the HEA incentive compensation ban make it an ineligible educational institution to request and disburse Title IV funds and thus its students are ineligible under the Title IV program."). And, finally, each Relator testified that they lacked any knowledge of the financial aid process or key financial aid certifications that comprise the "false or fraudulent claims" in their allegations.[9]

Because Relators were unaware that AAU even entered a program participation agreement, they cannot be found to have independent knowledge of AAU's intent when doing so. Relators have no knowledge of any facts about AAU's execution of the program participation agreement or any related conversations. Relators "'never participated in the negotiation, drafting, or implementation' of the allegedly fraudulent program (here [AAU's] certification that its incentive compensation did not violate the HEA's prohibition),'" and cannot be said to have seen the fraud with their own eyes or obtained firsthand knowledge of it. *Hoggett*, 2014 U.S. Dist. LEXIS 101528, \*29.

"All of this is vital information a legitimate relator must have . . . to plausibly allege that an institution 'planned to continue paying [banned compensation] while keeping the Department of Education in the dark.'" *Lopez*, 698 F. Supp. 2d at 639 (quoting *United States ex rel. Main v.*

---

[9] *See* Ex. 1 (Rose Depo.) p. 10, L. 1-10 p. 50, L. 12-22; Ex. 2 (Aquino Depo.) p. 125, L. 5-p.127, L. 24; Ex. 3 (Nelson Depo.) p. 179, L. 16-25; Ex. 4 (Stearns Depo.) p. 120, L. 3-25.

*Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005)).  Accordingly, courts have held that relators lacking this vital information could not be original sources.  *See Hoggett*, 2014 U.S. Dist. LEXIS 101528, *34 (concluding that relators were not original sources given their "lack of familiarity with the fundamentals of the very program participation agreement [their] suit charges [the school] with violating"); *see also Schultz*, 2009 U.S. Dist. LEXIS 17015, at *10; *Lopez*, 698 F. Supp. 2d at 638; *Corinthian*, 2013 U.S. Dist. LEXIS 188352, at *35-36.

      Relators also failed to timely provide the government with the information supporting their allegations *before* filing this *qui tam* action.  31 U.S.C. § 3730(e)(4)(B) (2009) "explicitly provides a time frame for when individuals . . . must 'voluntarily provide[] information to the government,' stating in no uncertain terms that they must do so 'before filing an action under this section.'"  *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1015 (9th Cir. 2006).  Relators' complaint plainly states that the information was provided to the government *simultaneously* with the filing of this action, ECF Doc. 1 ¶ 13, and Relators' counsel confirmed the same to defense counsel.  Defense counsel described the substance of that conversation in court without objection or response.  Because the language of § 3730(e)(4)(B) is plain, and because Relators failed to share the information with the government before filing this action, Relators are not original sources.  *See Davis v. District of Columbia*, 413 F. App'x 308, 311 (D.D.C. 2011); *United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, 2000 U.S. Dist. LEXIS 19249, *15-16 (N.D. Ill. 2000).

### III.     CONCLUSION

      For the foregoing reasons, AAU respectfully requests that the Court issue an order dismissing Relators' action, with prejudice, for lack of subject matter jurisdiction, retaining jurisdiction for 10 days should AAU wish to apply for fees, costs, or other relief.

1

2

Respectfully Submitted,

3

Dated:  March 16, 2016

4

5                                                                    /s/
                                               Steven M. Gombos, VA No. 30788
6                                              (admitted p*ro hac vice)*
                                               Ritzert & Leyton, P.C.
7                                              11350 Random Hills Road, Suite 400
                                               Fairfax, Virginia 22030
8                                              Telephone:  (703) 934-2660
                                               Facsimile:  (703) 934-9840
9                                              Email:  sgombos@ritzert-leyton.com
                                               Lead Counsel for Defendant
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I certify that I will/have electronically file(d) the foregoing with the Clerk of the Court using the CM/ECF system which shall cause the same to be delivered to the following via electronic transmission to the following counsel:

c/o Stephen R. Jaffe
The Jaffe Law Firm
101California Street, Suite 2710
San Francisco, California 94111
(415) 618-0100

Michael Von Loewenfeldt, Esq.
Kerr & Wagstaffe, LLP
101 Missions Street, 18th Floor
San Francisco, CA 94105
Telephone: (415) 371-8500
Facsimile: (415) 371-0500
mvl@kerrwagstaffe.com

Counsel for Plaintiffs/Relators

/s/

Steven M. Gombos
Attorney for Defendant
March 16, 2016
